[No. 2023.]

## C. H. MARTINDALE v. THE STATE.

THEFT — EVIDENCE.— Note in this case evidence *held* wholly insufficient to support a conviction for felonious theft, because there is no proof of a fraudulent taking of the property.

APPEAL from the District Court of Blanco. Tried below before the Hon. A. W. Moursund.

The case is fully disclosed in the opinion. A full recital of the evidence would give no clearer statement of the inculpatory facts proved than is contained in the opinion. A term of two years in the penitentiary was the penalty assessed against the appellant.

*Martin & Burnett*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for the theft of seven hogs, the property of Jake Pyburn, the punishment being assessed at confinement in the penitentiary for a term of two years. Pyburn's hogs were marked with a crop off the left ear and a swallow-fork in the right, and ranged in Falls Valley. They were of a sandy color, and some perhaps were spotted. These hogs were missing in February, 1884. Thomas Trammel sold to defendant a bunch of hogs marked in the same mark. This was in December, 1883, and when sold to defendant this bunch of hogs ranged from Falls Valley up to Rough Bend on the Perdinales river.

In February, 1884, before this indictment was presented, and before (as far as the record shows) any person ever suspected defendant, this appellant went to the house of John Wilson, the brother of Mrs. Pyburn, and stated to him that from all accounts he guessed he had killed four of her hogs and would rather give her two hogs than wrong her out of one; that he had bought a stock of hogs from Tom Trammel in the same mark; that he purchased the hogs from Trammel as they ran on the range about Falls Valley on the Perdinales, and above there to and in Rough Bend; and that he had made a mistake in killing her hogs; that he had heard from Trammel of the hogs being missing, and he guessed he had killed them, thinking them to be some of the Trammel stock of hogs.

Now, so far as the purchase from Trammel and the mark and

range of the hogs so purchased are concerned, this statement is thoroughly corroborated by Trammel.

It seems that John Pyburn left his family as soon as they reached Blanco county and never returned. Mrs. Pyburn went to see defendant in regard to obtaining pay for the hogs. When she reached defendant's house, he met her and stated "he guessed he had killed four of her hogs and was willing to pay her $35 for them; that he did not have any money then, but would do work for her if she desired; that he would rather give her two hogs than take one from her."

Thus far we have not discovered any fact of the slightest tendency to create a serious suspicion against the defendant. On the other hand, the above facts tend strongly to rebut any conclusion other than that an honest mistake was committed by the defendant, and that he was as ready, willing and anxious to repair the injury as the most honest and just man could have been. In fact, there is not the slightest evidence in the whole record tending to prove that defendant ever killed the Pyburn hogs save his confessions, and they (except those to Mrs. Pyburn) were made before indictment, or even before he was ever suspected of any connection with the hogs.

It is true that Fritz Fuchs states that he and defendant went, on the 24th day of December, 1883, to Rough Bend hunting hogs — defendant having a wagon — and that they hunted two days but found none; that Fritz then left and went home, and that defendant passed his house on his way home with the wagon; and that, a few days afterwards, Fritz met him again and asked him "what luck," and defendant replied that he had only got one hog.

Whose hog was this? Was it one belonging to Pyburn or to defendant? Upon this question the evidence is silent. We cannot presume that it was not the property of defendant, but was that of Pyburn. But concede that this hog belonged to Pyburn,— defendant was the first to disclose the fact that he had killed it.

But it may be insisted that as the hogs purchased from Trammel were, when purchased, running in Falls Valley, and as no witness had lately seen any in that range, that therefore defendant should have known that he had no hogs in that range, and hence fraudulently killed the Pyburn hogs. If this proposition was worthy of notice, it is conclusively answered by the testimony of Fritz Fuchs. He states that he had a great many hogs in Falls Valley, but hunted two days and failed to find a hog.

The evidence in this case wholly fails to support the verdict, and

we feel that we would be giving sanction to a great wrong, if not to defendant certainly to the principles of justice, to sustain the same. Because the evidence does not support the verdict a new trial should have been given, and, being refused, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 14, 1885.]